## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| The University of Chicago Medical Center,<br>5841 South Maryland Avenue<br>Chicago, IL 60637-1470,<br><br>Plaintiff,<br><br>vs.<br><br>Eric D. Hargan, Acting Secretary,<br>U.S. Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, DC 20201,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. _____ |

## COMPLAINT

Plaintiff, The University of Chicago Medical Center ("the Hospital"), by and through its undersigned attorneys, brings this action against defendant Eric D. Hargan, in his official capacity as the Acting Secretary ("the Secretary") of the Department of Health and Human Services ("HHS"), and states as follows:

**A.** **Preliminary Statement**

1.     This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* ("the Medicare Act"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et seq.*  The Hospital brings this action to assure that it receives complete and proper payment from Medicare for services that the Hospital provided during its fiscal year that ended on June 30, 2006 ("FY 2006").  Among other relief, the Hospital seeks an order from this Court reversing the June 25, 2014 decision of the Provider Reimbursement Review Board ("PRRB"), which dismissed for alleged lack of jurisdiction six claims arising from the Hospital's appeal of its FY

2006 Medicare cost report.  The Secretary's designee did not review the PRRB's decision and, thus, it constitutes final agency action for purposes of judicial review.  The Hospital also wants to assure that its direct graduate medical education ("DGME") and indirect medical education ("IME") payments for FY 2006 are based on actual and correct information from FYs 1996, 2004, 2005, and 2006, which the Hospital expects to occur based on its various pending appeals and reopening requests, including the Hospital's FY 2006 reopening request, which has been granted.

2.     The six claims dismissed by the PRRB relate to Medicare reimbursement for DGME costs, IME costs, and Medicare bad debts.  The dismissals were based on the Hospital's alleged failure to meet certain procedural requirements purportedly related to the appeal of the dismissed claims.  The PRRB's decision, however, is inconsistent with the PRRB's jurisdictional statute facially and as interpreted by the Supreme Court, other provisions of the Medicare Act, the APA, and other authorities.  Moreover, it is based, in part, on the clearly erroneous holding that two decisions issued by the Court of Appeals for the Seventh Circuit are "controlling precedent" for purposes of determining the PRRB's jurisdiction over the dismissed claims, even though the Hospital, which is located in Chicago, Illinois, was not a party in either of these Seventh Circuit cases, the Secretary has never made these decisions applicable to the Hospital through rulemaking, and the Hospital has the explicit statutory right to bring this action in the District of Columbia Circuit (as an alternative to the Seventh Circuit). Further, the PRRB did not question its jurisdiction when similar claims were presented in the Hospital's FYs 1996-1998 PRRB appeals, and there was no intervening change in the applicable statutes, or any judicial decision, to support the PRRB's change in position regarding its jurisdiction over these claims in the Hospital's FY 2006 appeal (the Hospital's challenges to similar jurisdictional dismissals

regarding its FYs 1999-2005 appeals are pending in other actions before this Court (15-cv-00701-TMN (1999), 15-cv-01009-BAH (2000 and 2001), 16-cv-01276-DLF (2002), and 16-02322-RC (2003-2005)).

3.       If the PRRB is found to have jurisdiction over some or all of the dismissed claims in this action, and in the pending actions involving FYs 1999-2005, the Hospital would receive significant additional Medicare payment.  Thus, the Hospital respectfully asks this Court to issue an order (a) reversing the PRRB's dismissal decision, (b) requiring the PRRB to accept jurisdiction over the claims improperly dismissed from the Hospital's PRRB appeal for FY 2006, (c) requiring the Secretary to recalculate the Hospital's FY 2006 Medicare payments using actual and correct information from FYs 1996, 2004, 2005, and 2006, after including the six Medicare payment-related claims that the PRRB improperly dismissed from the Hospital's FY 2006 appeal for alleged lack of jurisdiction, (d) paying the Hospital the additional amounts due, with interest calculated under 42 U.S.C. §1395oo(f)(2), and (e) granting other relief.

**B.      Jurisdiction and Venue**

4.       This Court has jurisdiction under 42 U.S.C. §1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §1361 (mandamus).  Venue lies in this judicial district under 42 U.S.C. §1395oo(f) and 28 U.S.C. §1391.

**C.      Parties**

5.       Plaintiff University of Chicago Medical Center (Medicare Provider No. 14-0088) is a not-for-profit, acute-care teaching hospital located in Chicago, Illinois.  The Hospital is currently known as The University of Chicago Medical Center.  When its Medicare provider number was issued, however, the Hospital was known as the University of Chicago Hospitals, and this remains the name associated with its provider number.  The Hospital furnishes inpatient

and outpatient hospital services, including to patients entitled to benefits under the Medicare program and others.  The Hospital operates graduate medical education programs for residents in various specialty and sub-specialty areas that qualify as approved medical residency programs eligible for Medicare reimbursement.

6.     Defendant Eric D. Hargan is the Acting Secretary of the Department of Health and Human Services, the federal department which contains the Centers for Medicare & Medicaid Services ("CMS").  The Secretary, the federal official responsible for administration of the Medicare Program, has delegated the responsibility to administer that program to CMS.  Before June 14, 2001, CMS was known as the Health Care Financing Administration ("HCFA").  In this Complaint, the Hospital refers to the agency as CMS or HCFA interchangeably or, as appropriate, depending on the context.

**D.     General Background of the Medicare Program**

7.     The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.  Pursuant to 42 U.S.C. §1395cc, the Hospital entered into a written agreement with the Secretary to be paid for providing hospital and other services to Medicare-eligible individuals.

8.     Hospitals are entitled to payment from Medicare for their "reasonable costs" incurred in providing services to Medicare beneficiaries, in accordance with regulations adopted by the Secretary.  "Reasonable cost" is defined in the statute as the:

> cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services.

42 U.S.C. §1395x(v)(1)(A).

9.      In adopting reasonable cost regulations, the statute requires the Secretary to "take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, *the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered.*"   *Id.* (emphasis added).   The Medicare Act further requires that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services . . . [under Medicare] shall take effect unless it is promulgated by the Secretary by regulation . . . ."   42 U.S.C. §1395hh(a)(2).

10.      Based on delegated authority from the Secretary, CMS implements the Medicare program, in part, through the issuance of official Rulings.   *See* 42 C.F.R. §401.108.   In addition to the substantive rules published in the Code of Federal Regulations and the Rulings, CMS publishes numerous other interpretive rules implementing the Medicare program, which are compiled in one or more of the CMS Manuals.

11.      Medicare payment to providers of services is commonly carried out by contractors acting as agents of the Secretary pursuant to contracts with him.   These contractors, which are now called "Medicare Administrative Contractors" ("MACs"), were formerly called Medicare Fiscal Intermediaries.   Each Medicare-participating hospital is assigned to a MAC.   At all times relevant to this action, the Hospital's MAC has been National Government Services, Inc. (previously known as AdminaStar Federal) ("the MAC").

E.      **The Cost Report Submission and Appeals Process**

12.      At the close of its FY, a hospital must submit a Medicare "cost report" showing the costs incurred during the FY and other data used to determine the Medicare reimbursement due to the hospital for the FY.   The hospital's MAC is required to analyze and audit the cost

report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the FY.

13.     If a hospital is dissatisfied with its MAC's final determination of the hospital's total Medicare program reimbursement for a cost reporting period, as reflected in the NPR, it may seek to have the NPR corrected or altered in one of two ways:

a.      The hospital has a right to obtain a hearing before the PRRB by filing an appeal with the PRRB within 180 days of receiving its NPR.  42 U.S.C. §1395oo.

b.      The hospital may request reopening of a MAC's determination within three years of the date of notice to the hospital of the MAC's determination.  42 C.F.R. §405.1885.

14.     If a hospital's reopening request is granted, and there is a change in the hospital's Medicare payment, the MAC's updated Medicare payment determination is set forth in a Revised NPR.  42 C.F.R. §405.1885(a).  The hospital has a right to obtain a hearing before the PRRB if it is dissatisfied with the Revised NPR by filing an appeal with the PRRB within 180 days of the hospital's receipt of its Revised NPR.  42 U.S.C. §1395oo; 42 C.F.R. §405.1889. The hospital also has three years to request reopening of a Revised NPR.

15.     Regardless whether a hospital files a request for a PRRB hearing or seeks reopening, regulations adopted by the Secretary require a MAC's determination to be reopened within three years of the date of notice of the determination to the hospital if CMS provides explicit notice to the MAC that the determination is "inconsistent with the applicable law, regulations, CMS ruling," *etc*.  42 C.F.R. §405.1885(c)(1)(i).

### F.   PRRB Hearing Procedures and the Procedure for Administrative and Judicial Review of PRRB Decisions

16.    The Medicare statute specifies the following requirements for a PRRB appeal:

Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board . . . if –

(1) such provider . . . is dissatisfied with a final determination of . . . its fiscal intermediary . . . as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report . . .

(2) the amount in controversy is $10,000 or more, and

(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination . . . .

42 U.S.C. §1395oo(a).

17.    Once jurisdiction for an appeal is established under 42 U.S.C. §1395oo(a), 42 U.S.C. §1395oo(d) grants the PRRB broad authority to decide all matters related to the provider's cost report:

The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination.

42 U.S.C. §1395oo(d).   In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction.

18.    The decision of the PRRB on substantive or jurisdictional matters constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision.  42 U.S.C. §1395oo(f)(1); 42 C.F.R.

§§405.1875 and 405.1877.  The Secretary has delegated her authority under the statute to review PRRB decisions to the CMS Administrator.

19.     A hospital may obtain judicial review of a final administrative decision, whether substantive or jurisdictional, by filing suit within 60 days of receipt of the final action on the administrative appeal in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia.  42 U.S.C. §1395oo(f).  In any such action, the Secretary is the proper defendant because, under 42 C.F.R. §421.5(b), the Secretary, acting through CMS, "is the real party of interest in any litigation involving the administration of the [Medicare] program."   Under 42 U.S.C. §1395oo(f)(2), interest is to be awarded in favor of a hospital that prevails in an action brought under 42 U.S.C. §1395oo(f).

20.     Judicial relief is available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right.  *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

21.     When the Hospital filed its FY 2006 cost report on or about November 30, 2006, CMS regulations stated:

> The provider (but no other individual, entity, or party) has a right to a hearing before the Board about any matter designated in §405.1801(a)(1), if:
>
> > (1) An intermediary determination has been made with respect to the provider; and
> > (2) The provider has filed a written request for a hearing before the Board under the provisions described in §405.1841(a)(1); and
> > (3) The amount in controversy (as determined in §405.1839(a)) is $10,000 or more.

42 C.F.R. §405.1835(a) (2005).   Also at that time, 42 C.F.R. §405.1801(a) defined an intermediary determination as "a determination of the total amount of payment due the hospital, pursuant to §405.1803 following the close of the hospital's cost reporting period, under that system [*i.e.*, the Medicare inpatient prospective payment system] for the period covered by the determination."  This regulatory scheme did not limit PRRB jurisdiction to items claimed on the cost report, in part because not all Medicare payment items could be validly claimed in the cost report.  *See Bethesda Hospital Association v. Bowen ("Bethesda")*, 485 U.S. 399, 405 (1988). Rather, a hospital merely had to be dissatisfied with the amount of total Medicare reimbursement, file a request for a PRRB hearing within the specified timeframe, and have at least $10,000 in controversy, which the Hospital indisputably did with respect to its FY 2006 Medicare cost report appeal.

22.     In 2008, CMS revised the regulations governing PRRB hearings and attempted to create new restrictions on PRRB jurisdiction.  The previous standards were changed to require, for cost reporting periods ending on or after December 31, 2008, that the provider either claim an item on the cost report or self-disallow the item:

> A provider (but no other individual, entity, or party) has a right to a Board hearing, as a single provider appeal, *for specific items claimed* for a cost reporting period covered by an intermediary or Secretary determination, only if—
>
> > (1) The provider has preserved its right to claim dissatisfaction with the amount of Medicare payment for the specific item(s) at issue, by either— (i) *Including a claim for specific item(s) on its cost report* for the period where the provider seeks payment that it believes to be in accordance with Medicare policy; or (ii) Effective with cost reporting periods that end on or after December 31, 2008, self-disallowing the specific item(s) . . . .

42 C.F.R. §405.1835(a) (2008) (emphasis added).  This regulation, which by its own terms does not apply to the Hospital's FY 2006 PRRB appeal, is invalid because it is inconsistent with the

statutory provision at 42 U.S.C. §1395oo(a) (entitling a provider to a hearing if the provider is dissatisfied with the amount of its total Medicare reimbursement) and other authorities.

23.     Even if the remaining 2008 regulations are valid, they cannot be applied to the Hospital's FY 2006 PRRB appeal because doing so would constitute improper retroactive application in violation of the APA and other authorities.  *See, e.g., Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988).

24.     Even if the 2008 regulations are valid and may be applied to the Hospital's FY 2006 PRRB appeal, the Hospital has complied with them.   The Secretary made other modifications to the PRRB's regulations more recently but they are not relevant to this action.

## G.     <u>Statutory and Regulatory Authorities Relating to DGME and IME Payments</u>

25.     Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the Medicare Inpatient Prospective Payment System ("IPPS") to reimburse hospitals, such as the Hospital, for inpatient hospital operating costs.  42 U.S.C. §1395ww(d).

26.     Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospital.   Rather, IPPS hospitals are paid predetermined, nationally applicable rates based on the diagnoses of the patient at discharge categorized within one or more Medicare severity diagnosis-related groups ("MSDRGs"), subject to certain payment adjustments.  42 U.S.C. §1395ww(d)(1)-(5); 42 C.F.R. Part 412.

27.     One of these IPPS payment adjustments is the "indirect medical education" or "IME" adjustment.    The IME payment is designed to compensate hospitals for the overall increased costs associated with operating a teaching hospital.  42 U.S.C. §§1395ww(d)(5)(B) and (h).   In creating the IME adjustment, Congress considered several factors that contribute to increased overhead costs at teaching hospitals, *e.g*., increased demands placed upon staff

participating in the education process, increased number of tests and procedures performed by residents as they learn their medical specialties, and teaching hospitals attract generally sicker patients and provide more specialized services, among other factors.   Congress required the Secretary to calculate teaching intensity for the IME adjustment based on the ratio of medical interns and residents (hereinafter "residents") being trained at the hospital to the available inpatient beds at the hospital (this is known as the "resident to bed ratio" or "RBR").   *Id.* Regulations adopted by the Secretary at 42 C.F.R. §412.105 elaborate on the calculation of IME payments.

a.      The IME payment is a percentage add-on to a teaching hospital's payments under IPPS. 42 U.S.C. §1395ww(d)(5)(B).   The "IME adjustment factor" is multiplied by the hospital's MSDRG payments for a FY to arrive at the IME reimbursement amount due for that FY. *Id*

b.      The formula mandated by Congress for the calculation of the IME adjustment factor depends, in part, on the number of residents, which is defined as "the number of full-time equivalent residents," or "FTEs," which "shall equal the average of the actual full-time equivalent resident count for the cost reporting period and the preceding two cost reporting periods."   42 U.S.C. §1395ww(d)(5)(B)(vi)(II).   Accordingly, Medicare payment for IME will vary depending on the number of residents in a hospital's residency training programs.

28.      The Medicare Act also requires that hospitals engaged in medical education activities be reimbursed for the *direct* costs of those activities.   42 U.S.C. §1395ww(h).   The "direct graduate medical education" or "DGME" payment is designed to account for the direct costs associated with residency programs, such as salaries and fringe benefits for residents.   The

DGME payment is calculated by multiplying a hospital's "approved amount" of direct education costs times its Medicare "patient load."  42 U.S.C. §1395ww(h)(3)(A).  The "patient load" is "the fraction of the total number of inpatient-bed-days . . . during the period which are attributable to patients with respect to whom payment may be made under [Medicare] part A . . . ."  42 U.S.C. §1395ww(h)(3)(C).

a.      The "approved amount" is a product of a hospital's "approved FTE resident amount" (which is not at issue here) and the weighted average number of FTEs.  42 U.S.C. §1395ww(h)(3); 42 C.F.R. §413.76.  The weighted average number of FTEs is calculated using "the actual full-time equivalent resident counts for the cost reporting period and the preceding two cost reporting periods."  42 U.S.C. §1395ww(h)(4)(G).  Accordingly, Medicare payment for DGME will vary depending on the number of residents in a hospital's residency training programs.

b.      The statute requires the Secretary to establish rules for determining the number of such residents.  *See* 42 U.S.C. §1395ww(h)(4).  The total number of residents is determined in accordance with the regulations adopted by the Secretary at 42 C.F.R. §§413.75 *et seq*., which is also used to determine IME resident FTEs.  In addition, 42 C.F.R. §413.79 sets forth the rules for weighting DGME FTE residents based, in part, on the length of their residency program.

29.      Historically, the more resident FTEs that a teaching hospital trained in a cost reporting period, the higher the teaching hospital's IME and DGME payments would be.  However, for cost reporting periods beginning on or after October 1, 1997, Congress established a cap on the number of a hospital's resident FTEs that can be counted for IME and DGME payment purposes, based on the hospital's number of FTEs during the most recent FY that ended

on or before December 31, 1996.  42 U.S.C. §§1395ww(d)(5)(B)(v) and (h)(4)(F).  Thus, a hospital's correct IME and DGME payments depend on (1) the correct FTE count in its current FY, (2) the correct FTE counts in its previous two FYs (*see* Paragraphs 27.b and 28.a, above), and (3) the correct FTE count in FY 1996 "base year."

30.     On March 23, 2010, Congress enacted the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119, 660 (2010).  Section 5505 of the ACA required the inclusion of didactic and vacation time when calculating IME and DGME resident FTEs.  The changes to benefit hospitals under §5505 were made retroactive to January 1, 1983. ACA §5505(c).

a.     For cost reporting periods prior to the March 23, 2010 enactment of the ACA, Congress allowed relief regarding didactic and vacation time to hospitals with "a jurisdictionally proper appeal pending as of the date of the enactment of this Act on the issue of payment for indirect costs of medical education . . . or for direct graduate medical education costs . . . ."  ACA §5505(d).

b.     Consistent with the statute, the Secretary stated that it was not necessary for a hospital to have appealed the specific issue of vacation or leave time:  "we interpreted section 5505(d) . . . to be only applicable in those limited circumstances where there is a 'jurisdictionally proper appeal pending' on a cost report specific to direct GME or IME respectively."  75 Fed. Reg. 71,800, 72,142-43 (Nov. 24, 2010).

## H.     Statutory and Regulatory Authorities Relating to Medicare Bad Debts

31.     Medicare bad debts are reimbursed on a cost basis.  Medicare regulations require that the following criteria be met before bad debts are an allowable cost:   (1) the  debt  must  be related  to  covered  services  and  derived  from  deductible  and  coinsurance  amounts,  (2)  the

provider must be able to establish that reasonable collection efforts were made, (3) the debt was actually uncollectible when claimed as worthless; and (4) sound business judgment established that there was no likelihood of recovery at any time in the future.  42 C.F.R. §413.89(e); *see also* Provider Reimbursement Manual ("PRM") §308.   Uncollectible deductible and coinsurance amounts are recognized as allowable bad debts in the reporting period in which such bad debts are determined to be uncollectible.  PRM §314.

32.     Generally, Medicare regulations require that a hospital engage in reasonable collection efforts as a prerequisite to claiming Medicare bad debts.  42 C.F.R. §413.89(e); *see also* PRM §308.  However, if a provider establishes that a patient is indigent, the provider is not required to make collection efforts against that patient before claiming the patient's Medicare bad debt.  PRM §312.  Moreover, a provider may deem a Medicaid patient to be indigent for purposes of the patient's Medicare bad debts.  *Id*.  Medicare bad debt claims attributable to patients covered under both Medicare and Medicaid, which are the only bad debt claims at issue in this action, are commonly referred to as "cross-over" bad debts.

## I.     Facts Specific to This Case

33.     On or about November 30, 2006, the Hospital timely filed its FY 2006 Medicare cost report, which included claims for DGME, IME, Medicare bad debt, and other Medicare-related payments.  On or about September 22, 2008, the MAC issued the Hospital's FY 2006 NPR, which included MAC audit adjustments to the Hospital's DGME, IME, bad debt, and other payments.

34.     Through a letter dated March 24, 2009, the Hospital timely filed notice of its appeal of its FY 2006 NPR with the PRRB.  By that letter, and subsequent filings with the PRRB, the Hospital challenged its DGME, IME, bad debt, and other Medicare payments for FY

2006.  By a letter dated November 19, 2009, the PRRB placed the Hospital's FY 2006 appeal in abeyance pending the outcome of litigation on an IME FTE issue in the Hospital's FY 1996 appeal.

35.     On February 8, 2007, the Hospital and the MAC partially settled the Hospital's FY 1996 PRRB appeal (the settlement did not include the IME FTE issue that was to be addressed in litigation).  Under the settlement, the MAC added FTEs to the Hospital's FY 1996 DGME and IME FTE count.  In partially settling the Hospital's FY 1996 appeal, the MAC did not question the PRRB's jurisdiction over the settled issues or any other aspect of the appeal.  Also, although the PRRB reviewed and accepted the settlement agreement, the PRRB did not, *sua sponte*, question its jurisdiction over any aspect of the FY 1996 appeal, which it is explicitly permitted to do.

36.     The litigated IME FTE issue for FY 1996 was ultimately decided in the Hospital's favor by the Court of Appeals for the Seventh Circuit.  *Univ. of Chicago Med. Ctr. v. Sebelius*, 618 F.3d 739 (7th Cir. 2010).  After that decision was issued, (a) the MAC added FTEs to the Hospital's FY 1996 IME and DGME resident FTE counts (which caused the Hospital's IME and DGME FTE caps to increase) and the parties resolved the remainder of the FY 1996 appeal and (b) the PRRB removed the Hospital's FY 2006 appeal from abeyance.

37.     On August 11, 2011, the Hospital sent a letter to the MAC requesting that the MAC reopen the Hospital's FY 2006 cost report for, among other purposes, as follows:

> The Provider requests that its FY 1996, FY 2004 and FY 2005 revised FTE counts and revised intern-to-bed ratio be used for FY 2006 for purposes of the DGME and IME FTE caps, three-year rolling averages for DGME, IME, and IME Capital payments, and the prior year IME intern-to-bed ratio.

The Hospital's previously-filed actions for FYs 2004 and 2005 are pending in this Court; the Hospital also has requested reopening for FYs 2004 and 2005.

38.     On November 21, 2011, the MAC sent a letter granting the Hospital's FY 2006

reopening request and the MAC's August 15, 2017 Notice of Reopening explicitly states that the

MAC will reopen the Hospital's FY 2006 cost report:

> To adjust the DGME and IME rolling average FTEs as well as the IME Prior
> Year Intern to Bed Ratio.  These are to be based on the FYE 6/30/04 and 6/30/05
> latest settled cost reports.  Resolution is pending applicable appeals on the 6/30/04
> and 6/30/05 cost reports.

The MAC has not yet addressed the Hospital's reopening requests for FYs 2004 and 2005.

39.     On March 21, 2012, the Hospital and the MAC settled the Hospital's FY 1997

appeal.  Under the settlement, the MAC, taking into account the updated and increased caps,

added FTEs to the Hospital's IME and DGME resident FTE counts for FY 1997, among other

changes.  As with the earlier settlement of the FY 1996 appeal, the MAC did not question the

PRRB's jurisdiction over the settled issues or any other aspect of the FY 1997 appeal.  Also,

although the PRRB reviewed and accepted the FY 1997 settlement agreement, the PRRB again

did not question its jurisdiction over these issues or any other aspect of the FY 1997 appeal.  In

fact, the signed settlement agreement for FY 1997 expressly stated that PRRB jurisdiction was

proper.

40.     On March 26, 2012, the Hospital and the MAC settled the Hospital's FY 1998

appeal.  Under the settlement, the MAC, again taking into account the updated and increased

caps, added FTEs to the Hospital's IME and DGME resident FTE counts for FY 1998, among

other changes.  As with the settlement of the FYs 1996 and 1997 appeals, the MAC did not

question the PRRB's jurisdiction over the settled issues or any other aspect of the FY 1998

appeal. Also, although the PRRB reviewed and accepted the FY 1998 settlement agreement, the

PRRB again did not question its jurisdiction over these issues or any other aspect of the FY 1998

appeal.  In fact, the signed settlement agreement for FY 1998 expressly stated that PRRB jurisdiction was proper.

41.  The MAC's July 23, 2013 filing objected to the PRRB's jurisdiction in the Hospital's FY 2006 appeal over the Hospital's challenge to Medicare crossover bad debts that could have been, but allegedly were not, included in the Hospital's FY 2006 as-filed cost report. The MAC's July 30, 2013 filing objected to the PRRB's jurisdiction in the Hospital's FY 2006 appeal over the Hospital's challenge to the MAC's refusal to (1) include the correct amount of didactic time in the Hospital's IME FTE count, (2) include the correct amount of vacation time in the Hospital's IME FTE count, (3) include inadvertently omitted FTEs in the Hospital's IME FTE count, (4) modify the Hospital's DGME and IME FTE caps to account for certain new medical residency training programs, and (5) use the actual IME FTE count from the Hospital's FY 2005 cost report to compute the IME Prior Year (*i.e.* FY 2005) Resident to Bed Ratio ("RBR") when calculating the Hospital's FY 2006 IME payment.

a.  The Hospital timely responded to both of the MAC's jurisdictional filings in a single, combined filing dated August 21, 2013.

b.  In a letter dated June 25, 2014 (Exhibit 1 to this Complaint (without enclosures)), the PRRB dismissed from the Hospital's FY 2006 appeal for alleged lack of jurisdiction (1) the Hospital's Medicare bad debt claim for "items and services not claimed or not properly reported on the cost report where the failure to claim was due to inadvertence rather than futility" (Exhibit 1 at 12), and (2) the Hospital's DGME and IME payment-related claims challenged by the MAC for lack of jurisdiction, finding that the Hospital did not timely appeal those claims (*id.*).

42.     By this Complaint, the Hospital challenges the PRRB's June 25, 2014 decision, which dismissed the following six Medicare payment claims from the Hospital's FY 2006 appeal:  (1) Medicare bad debts, (2) didactic time used in the IME FTE count, (3) vacation time used in the IME FTE count, (4) inadvertently omitted IME FTEs, (5) new medical resident programs improperly omitted from the Hospital's DGME and IME FTE caps, and (6) the Prior Year (FY 2005) RBR that the MAC used to calculate the Hospital FY 2006 IME payment.

a.      The PRRB dismissed the Medicare bad debt claim because the Hospital allegedly could have, but did not, include the bad debts at issue in its as-filed FY 2006 Medicare cost report.

b.      The PRRB dismissed the five DGME and IME claims based on its finding that the Hospital allegedly did not timely raise its challenges to these claims in its PRRB appeal as the Hospital's appeal letter supposedly did not identify these five claims with sufficient specificity.

43.     By this Complaint, the Hospital also wants to assure that its IME and DGME payments for FY 2006 are based on actual and correct information from FYs 1996, 2004, 2005, and 2006.  Based on its various appeals and reopening requests, the Hospital expects the MAC to recalculate the Hospital's IME and DGME payments for FY 2006 to reflect actual and correct information from FYs 1996, 2004, 2005, and 2006.  However, if necessary, the Hospital will ask this Court to order the Secretary and the MAC to recalculate the Hospital's FY 2006 total Medicare payments based on actual and correct information from FYs 1996, 2004, 2005, and 2006, after including the six Medicare payment-related claims that the PRRB improperly dismissed from the Hospital's FY 2006 appeal for alleged lack of jurisdiction, and pay the

Hospital the additional amounts due, with interest calculated in accordance with 42 U.S.C. §1395oo(f)(2).

**J.      The PRRB's June 25, 2014 Jurisdictional Decision is Unlawful and Must Be Reversed**

44.      The PRRB's June 25, 2014 decision is unlawful and must be reversed with respect to all six of the jurisdictionally dismissed Medicare payment-related claims because the Hospital has the right to a hearing on all of the dismissed issues having indisputably met all of the jurisdictional prerequisites in 42 U.S.C. §1395oo(a).

a.      Section 1395oo(a) establishes three requirements for a Board hearing: (a) the hospital must be "dissatisfied with a final determination of . . . its fiscal intermediary . . . as to the *amount of total program reimbursement*," (b) at least $10,000 must be in controversy; and (c) the hospital must file an appeal within 180 days of the intermediary's final determination.  (Emphasis added.)

b.      This statutory provision is plain on its face and creates an entitlement to a Board hearing on the six improperly dismissed claims based on the Hospital's clear dissatisfaction with the total amount of its Medicare program reimbursement for FY 2006 and having indisputably met the two other requirements.

45.      The Hospital properly claimed DGME, IME, and Medicare bad debts in its as-filed FY 2006 Medicare cost report and appealed all three of these payments to the PRRB.  This entitles the Hospital to a PRRB hearing over all aspects of these payments, including the six payment-related claims dismissed by the PRRB in the Hospital's FY 2006 appeal.  The Supreme Court, in *dicta*, noted that the *Bethesda* providers "stand on different grounds than do providers who . . . fail to request from the intermediary reimbursement for all costs to which they are entitled under applicable rules," 485 U.S. at 406.   The Hospital's appeal is readily

distinguishable from those decisions the PRRB cited in support of its position that the PRRB's jurisdiction is only discretionary because, in those appeals, the hospitals had omitted from their cost reports entire categories of costs.   Here, DGME, IME, and Medicare bad debts were presented to and considered by the MAC and the MAC made audit adjustments relating to DGME, IME, and Medicare bad debts.   Moreover, in previous decisions, the PRRB held that adjustments to payments under IPPS, such as DGME and IME, are not "costs" that need to be claimed on the Medicare cost report.

46.     The PRRB dismissed the five DGME/IME payment-related claims based on the Hospital's alleged failure to identify these matters with sufficient specificity in its appeal letter.

a.     The PRRB's dismissal of these five claims is unlawful and must be reversed because, as a factual matter, each of these claims was encompassed in the Hospital's March 24, 2009 appeal letter challenging (i) the total number of FTEs "used for purposes of calculating [the Hospital's] payment for [IME]," (ii) the "prior year DGME and IME FTEs," and (iii) the FTE count "used for purposes of calculating the [DGME/IME] FTE cap[s]."

b.     In settling the Hospital's earlier PRRB appeals, the MAC agreed to (with the PRRB's acceptance) recalculate the Hospital's prior year RBR.   Using correct information in cost report appeals is required under *Kaiser Found. Hosps. v. Sebelius*, 708 F.3d 226 (D.C. Cir. 2013) and other authorities.   It is unreasonable under the Medicare Act, the APA, and other authorities, for the PRRB to assert jurisdiction over some components of the DGME and IME calculations, but leave others based on indisputably incorrect data.

47.     The PRRB's dismissal of the Hospital's claims relating to didactic and vacation time IME FTEs was improper because it violates the relief ordered by Congress in ACA §5505

where, as here, the hospital had a jurisdictionally-proper pending appeal on IME as of March 23, 2010, which the Hospital indisputably had.

a.     Until the ACA, CMS specifically excluded didactic time from the IME FTE count.  ACA §5505(b) requires CMS to include both didactic time and vacation and leave time.  ACA §5505(c)(1).  These ACA provisions were made retroactive to cost reporting periods beginning on or after January 1, 1983.  ACA §5505(c).

b.     For cost reporting periods prior to the enactment of the ACA on March 23, 2010, Congress limited the inclusion of didactic and vacation time to hospitals with "a jurisdictionally proper appeal pending as of the date of the enactment of this Act on the issue of payment for indirect costs of medical education . . . or for direct graduate medical education costs . . . ."  ACA §5505(d).

c.     CMS subsequently clarified that it was not necessary for a hospital to have appealed the specific issue of didactic and vacation time:  "we interpreted section 5505(d) . . . to be only applicable in those limited circumstances where there is a 'jurisdictionally proper appeal pending' on a cost report specific to direct GME or IME respectively."  75 Fed. Reg. 71,800, 72,142-43 (Nov. 24, 2010).

d.     The Hospital's FY 2006 is after the January 1, 1983 retroactive effective date of ACA §5505, and the Hospital had a jurisdictionally proper appeal pending on DGME and IME for FY 2006 as of March 23, 2010, when the ACA was enacted.  ACA §5505 therefore entitles the Hospital to relief on didactic and vacation time.

48.     The PRRB found that the Hospital did not timely appeal the issue of whether the DGME and IME FTE caps should be revised to account for new medical residency programs. The Hospital, however, identified correction of the DGME and IME FTE caps in its appeal letter.

Moreover, the Hospital submitted claims for both DGME and IME payment, and the MAC made numerous audit adjustments relating to such claims.  The Hospital reported its DGME and IME FTE caps on its as-filed cost report.  Thus, FTE caps are clearly "matters covered by such cost report" for purposes of Board jurisdiction under 42 U.S.C. §1395oo(a).

49.     The PRRB dismissed the Medicare bad debt claim because the Hospital allegedly failed to include the bad debts at issue in its as-filed FY 2006 Medicare cost report.  This dismissal is unlawful and must be reversed because 42 U.S.C. §1395oo does not require a hospital to present all bad debt claims to its MAC in its as-filed cost report as a jurisdictional prerequisite to a PRRB hearing on the bad debts at issue.

a.     The PRRB has jurisdiction as to the Hospital's claim that the additional bad debts at issue should be allowed for FY 2006 because the Hospital included Medicare bad debts of the kind at issue in its as-filed FY 2006 cost report and the MAC made audit adjustments to the Hospital's bad debt claim.

b.     The Supreme Court held that the PRRB has the authority to review and revise a Medicare cost report with respect to matters covered by it.  *Bethesda Hosp. Ass'n.*, 485 U.S. at 406.  Medicare bad debt payments are indisputably covered by the Medicare cost report and the MAC made Medicare bad debt adjustments in the Hospital's FY 2006 NPR.

c.     The PRRB based its bad debt dismissal decision on two cases from the Seventh Circuit that the PRRB improperly applied as "controlling precedent."  These decisions are not "controlling precedent" because the Hospital was not a party in them.  Further, the Hospital has the statutory right under 42 U.S.C. §1395oo(f)(1) to seek judicial review of the PRRB's jurisdictional dismissals in either the Seventh Circuit or the D.C. Circuit and the D.C. Circuit has no similar precedent.  Moreover, not only have the two Seventh

Circuit cases not been followed by the D.C. Circuit, the PRRB and the CMS Administrator also have not consistently followed the holdings in these cases.

50.     The PRRB dismissed the Medicare bad debt claim from the Hospital's FY 2006 appeal for alleged lack of jurisdiction because the PRRB found that the Hospital allegedly was not "dissatisfied" with the MAC's determination on the bad debts at issue, as they were not presented to the MAC in the Hospital's as-filed cost report.  The PRRB's decision must be reversed as a matter of fact and law because the Hospital is, and has been, dissatisfied with the MAC's failure to include the bad debts at issue when calculating the Hospital's FY 2006 total Medicare payment.

a.     At the time the Hospital filed its FY 2006 cost report, it was not subject to the strict cost report presentation standard that the PRRB applied in dismissing this matter from the Hospital's FY 2006 appeal.  The PRRB has prejudicially and unlawfully applied its 2008 regulation to a cost report that was submitted before the adoption of those regulations.

b.     The Hospital properly claimed Medicare bad debts in its as-filed cost report, the MAC adjusted Medicare bad debts in the NPR, and the Hospital appealed its Medicare bad debt payments for FY 2006.  This entitles the Hospital to a PRRB hearing on Medicare bad debts.  The PRRB's jurisdiction dismissal of this bad debt claim in the Hospital's FY 2006 appeal is unlawful.

51.     The challenged jurisdictional decision was issued almost eight years after the close of FY 2006.  The jurisdictional decision was based on (a) the improper retroactive application of the 2008 regulations and (b) new interpretations by the PRRB of its authorities.  The application of the 2008 regulations and these new interpretations to the Hospital's FY 2006 appeal is improper because they are inconsistent with the PRRB's authorizing statute, more than 40 years of PRRB

decisions, the APA, and other authorities.  Moreover, even if the Secretary could lawfully apply the regulations and new interpretations generally, they could not be applied to the Hospital's FY 2006 appeal because doing so would have an unlawful *retroactive* effect under *Georgetown, supra,* and other authorities.  Further, if the Secretary could lawfully apply the regulations and new interpretations retroactively, the Hospital met them.

52.     The MAC's first jurisdictional challenge was presented in the Hospital's FY 2006 appeal more than four years after the Hospital filed that appeal.  This was after the three-year period for the Hospital to seek corrective reopening of its FY 2006 NPR under 42 C.F.R. §405.1885(b)(2).  The MAC's long delay before presenting its jurisdictional challenges is inconsistent with PRRB practice and unreasonably prejudicial to the Hospital.  The Commentary to PRRB Rule 44.4 states in relevant part as follows:  "In most instances, the reasons for a jurisdiction challenge are apparent early in the case and early resolution preserves resources of all the parties and the PRRB.  The new regulations and these PRRB rules establish the expectation that MACs review and notify the PRRB of jurisdiction questions at least by the date of filing the first response to the appeal."  That did not occur here.

53.     The MAC, CMS, and the Secretary have never challenged the Hospital's position that the Hospital's FY 2006 DGME, IME, and Medicare bad debt payments were incorrectly low because of the jurisdictionally dismissed claims.  Thus, if the Court were to reverse the improper Medicare payment-related jurisdictional dismissals, the effect would be to have the Hospital receive the full Medicare payment for FY 2006 to which it is entitled as a matter of fact and law.

**K.**     **The Hospital's Right to Judicial Review of its FY 2006 Total Medicare Payment and the PRRB's Jurisdictional Decision**

54.     The PRRB's adverse FY 2006 jurisdictional decision stated that the Hospital could seek judicial review of the PRRB's jurisdictional denials "upon final disposition of this case." Exhibit 1 at 12.

55.     On October 27, 2017, the Hospital signed a "Full Administrative Resolution" with respect to its FY 2006 PRRB appeal.  Page three of that Full Administrative Resolution for the FY 2006 appeal included the following language:

> The parties note the PRRB's decision denying jurisdiction for these Issues stated that the Provider could seek judicial review of the PRRB's jurisdictional denials "upon final disposition of this case," which the Provider plans to do in response to the PRRB's expected closing of this case (the Provider understands that the closing of this case constitutes the "final disposition" for purposes of further administrative and judicial review).

Pages one through two of that Full Administrative Resolution acknowledged that the payment for IME and DGME for FY 2006 did not include changes that the Hospital had requested relating to FYs 2004 and 2005 because of the PRRB's jurisdictional dismissals of certain matters for those FYs (those jurisdictional dismissals are currently being challenged in this Court).  Because the MAC granted the Hospital's reopening request for FY 2006, and because of the Hospital's pending litigation and reopening requests for FYs 2004 and 2005, the Hospital expects the Secretary and the MAC to recalculate the Hospital's IME and DGME payments for FY 2006 so that it reflects actual and correct information from FYs 1996, 2004, 2005, and 2006.

56.     The PRRB's November 20, 2017 letter (Exhibit 2 to this Complaint (without enclosures)), which the Hospital received on November 27, 2017, closed the Hospital's FY 2006 appeal.  The PRRB's letter stated, in part:  "The previous jurisdictional decisions issued by the

Board are now final. Review of the jurisdictional determinations are available under the provisions of 42 U.S.C. §1395oo(f) and 42 C.F.R. §§405.1875 and 405.1877."

57. Because the CMS Administrator has not reviewed the PRRB's jurisdictional decision in the Hospital's FY 2006 PRRB appeal, the PRRB's November 20, 2017 letter is the final agency action for purposes of judicial review of the Hospital's FY 2006 appeal.

58. This action is being timely commenced within 60 days after the Hospital's receipt of the PRRB's November 20, 2017 letter, which gave notice of the final disposition of the Hospital's FY 2006 appeal. *See* 42 U.S.C. §1395oo(f)(1). Thus, this Court has the authority to review the Hospital's FY 2006 total Medicare payments and the PRRB's decision.

## COUNT I
### Judicial Review under the APA and the Medicare Act
### (Decision is Contrary to Law)

59. Plaintiff hereby incorporates by reference paragraphs 1 through 58 herein.

60. The PRRB's decision dismissing the six Medicare payment-related claims from the Hospital's FY 2006 appeal for alleged lack of jurisdiction is unlawful and must be reversed because it is procedurally and substantively contrary to the APA, the Medicare Act (including ACA §5505), and other authorities, including but not limited to various Medicare regulations. The Hospital validly appealed its FY 2006 DGME, IME, and Medicare bad debt payments to the PRRB and the Hospital is entitled to full and correct payment on those matters, including the DGME and IME payments resulting from the MAC's granting the Hospital's August 11, 2012 reopening request for FY 2006.

61. The PRRB's decision dismissing the six Medicare payment-related claims from the Hospital's FY 2006 appeal for alleged lack of jurisdiction is procedurally and substantively unlawful and must be reversed because it relies on the improper retroactive application of

regulations, interpretations, standards, and other authorities, that cannot be validly applied retroactively to the Hospital's FY 2006 PRRB appeal.  The PRRB's decision also must be reversed because the Hospital met the improper and improperly retroactively applied regulations, interpretations, standards, and other authorities.

62.     The PRRB's decision dismissing the six Medicare payment-related claims from the Hospital's FY 2006 appeal for alleged lack of jurisdiction is procedurally and substantively unlawful and must be reversed because it improperly relies as "controlling precedent" on two Seventh Circuit cases that are not binding on the Hospital and do not apply to this action.

63.     The PRRB's decision dismissing the six Medicare payment-related claims from the Hospital's FY 2006 appeal for alleged lack of jurisdiction is procedurally and substantively unlawful and must be reversed because it unlawfully deprives the Hospital of its right to appeal a final determination of the Secretary under 42 U.S.C. §1395oo(a) and other authorities.

**COUNT II**
**Judicial Review under the APA**
**(Decision is Arbitrary and Capricious)**

64.     Plaintiff hereby incorporates by reference paragraphs 1 through 63 herein.

65.     Under 42 U.S.C. §1395oo(f), the PRRB's decision dismissing the six Medicare payment-related claims from the Hospital's FY 2006 appeal for alleged lack of jurisdiction is final agency action that is subject to judicial review under the applicable provisions of the APA. Under the APA, the reviewing court shall set aside the final agency decision if, *inter alia*, it is contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record.  5 U.S.C. §706.

66.     The PRRB's decision dismissing the six Medicare payment-related claims from the Hospital's FY 2006 appeal for alleged lack of jurisdiction is procedurally and substantively arbitrary, capricious, and otherwise unlawful under the APA because it is inconsistent with:

a.      the Medicare Act (including ACA §5505), and other authorities, including but not limited to various Medicare regulations;

b.      previous decisions of the PRRB and the Secretary;

c.      the PRRB's previous actions in similar appeals, including but not limited to the acceptance of jurisdiction in the Hospital's FYs 1996-1998 PRRB appeals over claims similar to those that the PRRB dismissed from the Hospital's FY 2006 appeal; and

d.      the PRRB's governing rules.

The PRRB failed to explain or provide a valid rationale for its inconsistent actions (nor can it validly do so).

67.     The PRRB's decision dismissing the six Medicare payment-related claims from the Hospital's FY 2006 appeal for alleged lack of jurisdiction prejudices the Hospital by (i) addressing jurisdiction after the time for corrective reopening had passed and (ii) using the lack of clarity of CMS regulations and guidance as a basis for the jurisdictional dismissals. Moreover, the PRRB unlawfully and unreasonably asserted jurisdiction over the Hospital's FY 2006 DGME and IME payments while rejecting jurisdiction over all of the statistics, matters, and sub-issues necessary to assure that these payments are correct.  This prejudices the Hospital by, *inter alia*, causing its FY 2006 Medicare payment to be incorrectly low under the Medicare Act.

68.     The PRRB's decision dismissing the six Medicare payment-related claims from the Hospital's FY 2006 appeal for alleged lack of jurisdiction is procedurally and substantively arbitrary, capricious, and otherwise unlawful under the APA because the PRRB failed to address

all of the arguments that the Hospital made to oppose the MAC's jurisdictional challenges. Moreover, the PRRB's decision results in the Hospital's FY 2006 Medicare payment being based on incorrect factual data. The PRRB also unlawfully failed to take into account that the Hospital had relied on the Secretary's guidance when (i) submitting its FY 2006 Medicare as-filed cost report and (ii) filing and pursuing its FY 2006 PRRB appeal.

69. The PRRB's decision dismissing DGME and IME payment-related claims from the Hospital's FY 2006 appeal for alleged lack of jurisdiction is procedurally and substantively arbitrary, capricious, and otherwise unlawful under the APA because the PRRB failed to explain or provide a valid rationale for accepting jurisdiction to correct the Hospital's FY 2006 DGME and IME payments, but limiting its jurisdiction to some, but not all, of the statistics, matters, and sub-issues that need to be corrected to assure that these payments are, in fact, statutorily accurate.

70. The PRRB's decision dismissing the six Medicare payment-related claims from the Hospital's FY 2006 appeal for alleged lack of jurisdiction is thus contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record pursuant to 5 U.S.C. §706, and other laws, and must be reversed or set aside. The Hospital validly appealed its FY 2006 DGME, IME, and Medicare bad debt payments to the PRRB and the Hospital is entitled to full and correct payment on those claims, including the DGME and IME payments resulting from the MAC's granting the Hospital's August 11, 2012 reopening request for FY 2006.

**COUNT III**
**Arbitrary and Capricious and Unsupported by Substantial Evidence Under the APA**
**(Decision is Unsupported by the Evidence in the Record)**

71.     Plaintiff hereby incorporates by reference paragraphs 1 through 70 herein.

72.     The PRRB's decision dismissing the six Medicare payment-related claims from the Hospital's FY 2006 appeal for alleged lack of jurisdiction must be set aside because it is procedurally and substantively arbitrary, capricious, unsupported by substantial evidence in the record, and otherwise unlawful under the APA because, *inter alia*, the PRRB failed to address all of the arguments that the Hospital made to oppose the MAC's jurisdictional challenges and the PRRB relied on incorrect facts.

73.     The PRRB's decision is thus contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record pursuant to 5 U.S.C. §706, and other laws, and must be reversed or set aside.   The Hospital validly appealed its FY 2006 DGME, IME, and Medicare bad debt payments to the PRRB and the Hospital is entitled to full and correct payment on those claims, including the DGME and IME payments resulting from the MAC's granting the Hospital's August 11, 2012 reopening request for FY 2006.

**COUNT IV**
**Mandamus**

74.     Plaintiff hereby incorporates by reference paragraphs 1 through 73 herein.

75.     The Secretary has the non-discretionary duty to apply properly the substantive and procedural laws relating to Medicare payment and the PRRB has the non-discretionary duty to apply properly the law relating to its jurisdiction.

76.     The Hospital properly (a) appealed its FY 2006 DGME, IME, and Medicare bad debt payments to the PRRB, (b) requested reopening of its FY 2006 DGME and IME payments, which the MAC granted, and (c) otherwise sought correct and full Medicare payment for FY

2006. Thus, the Hospital is entitled to issuance of a writ of mandamus under the Medicare Act and other authorities requiring (a) the PRRB to accept jurisdiction over the six Medicare payment-related claims improperly dismissed by the PRRB from the Hospital's FY 2006 appeal for alleged lack of jurisdiction and (b) the Secretary and/or the MAC to recalculate the Hospital's total Medicare payments due for FY 2006 based on actual and correct information from FYs 1996, 2004, 2005, and 2006, after including the six Medicare payment-related matters that the PRRB improperly dismissed from the Hospital's FY 2006 appeal for alleged lack of jurisdiction, and pay the Hospital the additional amounts due, with interest calculated in accordance with 42 U.S.C. §1395oo(f)(2).

## Requested Relief

WHEREFORE, the Hospital requests:

1.      An order reversing the PRRB's June 25, 2014 adverse jurisdictional decision dismissing six Medicare payment-related claims from the Hospital's FY 2006 appeal;

2.      An order instructing the Secretary and the PRRB to reinstate the six Medicare payment-related claims that the PRRB improperly dismissed from the Hospital's FY 2006 appeal for alleged lack of jurisdiction;

3.      An order instructing the Secretary and the MAC to recalculate the Hospital's FY 2006 total Medicare payments based on actual and correct information from FYs 1996, 2004, 2005, and 2006, after including the six Medicare payment-related claims that the PRRB improperly dismissed from the Hospital's FY 2006 appeal for alleged lack of jurisdiction, and pay the Hospital the additional amounts due, with interest calculated in accordance with 42 U.S.C. §1395oo(f)(2);

4.      Issuance of a writ of mandamus requiring the (a) the PRRB to accept jurisdiction over the six Medicare payment-related claims dismissed by the PRRB from the Hospital's FY 2006 appeal for alleged lack of jurisdiction and (b) the Secretary and/or the MAC to recalculate the Hospital's total Medicare payments due for FY 2006 based on actual and correct information from FYs 1996, 2004, 2005, and 2006, after including the six Medicare payment-related claims that the PRRB improperly dismissed from the Hospital's FY 2006 appeal for alleged lack of jurisdiction, and pay the Hospital the additional amounts due, with interest calculated in accordance with 42 U.S.C. §1395oo(f)(2);

5.      An order that the Court shall retain jurisdiction over this action for purposes of enforcement until notice, upon motion of the Hospital, of the Secretary's compliance with this Court's orders, and the PRRB's compliance with all of the remand instructions of the Secretary;

6.      Legal fees and costs of suit incurred by the Hospital; and

7.      Such other relief as this Court may consider appropriate.

DATED: January 17, 2018                 Respectfully submitted,

                                        HOOPER, LUNDY & BOOKMAN, P.C.


                                        By:    /s/ Robert L. Roth
                                            Robert L. Roth, Esq. (D.C. Bar No. 441803)
                                            HOOPER, LUNDY & BOOKMAN, P.C.
                                            401 9th Street, N.W., Suite 550
                                            Washington, D.C.  20004
                                            Tel:  (202) 580-7701
                                            Fax:  (202) 580-7719
                                            Email:  rroth@health-law.com

                                            Attorneys of Record for Plaintiff The University of
                                            Chicago Medical Center